All right. My goodness. Case 16-3389, United States v. Sanders. Good morning. Good morning. Guess what? Close afternoon. Time after time. Go ahead. May it please the court. The crux of this appeal is the sheer physical impossibility of the testimony of the government's only witness who claimed to have seen my client, Cortez Sanders, in possession of a firearm. At trial, to prove Mr. Sanders guilty of being a felon in possession of a firearm, the government presented the testimony of CPD Officer Wallace. And Officer Wallace told a story of his foot chase of Mr. Sanders that is physically impossible. It defies the laws of physics. A review of his testimony shows that he could not have been as close to Mr. Sanders as he claimed, and he could not have seen what he claimed to have seen. Does Mr. Sanders have any reasons to question the testimony that he was the man running from the police? At trial, we did not contest that, Your Honor. I mean, I understand that Officer Wallace lost sight of him for some fraction of a minute, but first he saw his face, correct? That's what he testified to. But we do believe, Your Honor, that Officer Wallace's testimony as a whole is incredible, that it's physically impossible, particularly at that moment where he says he saw Mr. Sanders' face. So the reason we believe that his testimony was physically impossible is because he testified that he was chasing Mr. Sanders at a distance of 10 to 15 feet. He said he was running as fast as he could safely. He testified that he was trying to gain on Mr. Sanders. He was running quickly. And then he testified that at the moment when Mr. Sanders allegedly discarded the gun, that Mr. Sanders slowed nearly to the point of stopping. On direct, he said that Mr. Sanders did stop. On cross-examination, he indicated that Mr. Sanders didn't make a complete stop but slowed enough to make the toss. And so it's intuitive that at a distance of 10 meters, somebody sprinting behind an individual will catch that individual almost instantly when that individual stops. And furthermore, he testified not only that he didn't catch Mr. Sanders but that he completely lost sight of a 6-foot tall man running 10 feet in front of him. It's very dark. So to what extent does your argument depend upon the accuracy of the 10 to 15 feet estimate? We believe that the 10 to 15 feet is important because it indicates what Mr. Wallace could or could not have seen because if Mr. Wallace was any further than 10 feet behind Mr. Sanders, then he was not in that alley. He was in the adjacent lot. And we know that because Officer Wallace testified about the location of the garbage can where Mr. Sanders allegedly discarded the weapon. He testified that that garbage can was located in the alley, that it was located behind that first house, and that it was south of the property line. So we know that the garbage can was in the alley. And so if Officer Wallace was more than 10 feet behind Mr. Sanders, then he wasn't in that alley. He was in the lot. And if he was in the lot, then he couldn't have seen Mr. Sanders discard that firearm in the garbage can. And we know that because the evidence introduced at trial. We have the government's aerial photograph, which shows all of the obstruction in that backyard. We also have defendant's photo 11, which is appended to our opening brief, which shows that there's a large wooden fence in that backyard. And so if Officer Wallace was indeed in that vacant lot, then he could not have seen around that corner to see Mr. Sanders dispose of a firearm in that alley. And that's a point that the government conceded. In their response to the defendant's post-trial motions in the district court, the government said that if Officer Wallace was in that alley, he easily could have lost sight of the defendant after the defendant ran behind the house just south of the vacant lot. And so I'd also point out that Officer Wallace's testimony about being able to observe Mr. Sanders toss the weapon, there's incompatibilities there. He says that he was unable to keep track of Mr. Sanders, this six-foot-tall man in motion, but he was able to observe him discard a firearm that was three by five, that was no bigger than an index card, half of the surface area of which was wood. So he's claiming that it was so dark that he could not see this man running through the alley, but he could see that very small item be discarded around the corner, I'd point out. So based on the fact that Officer Wallace's testimony was incredible, we believe that the appropriate remedy is for this court to vacate that conviction based on incredible evidence or alternatively to reverse the conviction and order a new trial because that verdict was against the manifest weight of the evidence. And I point out that the government's other evidence at trial, the so-called corroborating evidence, is only generously called that. Officer Callahan, who recovered the firearm, testified that he recovered the firearm from a location entirely different than where Officer Wallace indicated. Officer Callahan said that the firearm was recovered from a garbage can behind 5839 South Emerald, which is the middle house on the block. And Officer Wallace was very clear that the firearm was discarded at the northernmost house, just south of the property line. He was specific about that. So in terms of where the gun was recovered, the only evidence we have is the contradictory evidence of the two officers. And that's all the evidence that we have because there was no further investigation done. We have evidence, don't we, that the defendant threatened to shoot the fellow known as ATL outside the club? Princess White testified that ATL threatened to shoot Mr. Sanders and that he replied in kind, I'll shoot you back. Yes, that's the other testimony. But I don't believe that that's sufficient without Officer Wallace's testimony to sustain a conviction. One of the things that concerns me about this case, counsel, is that I guess I've seen both civilian and police officer witnesses be wildly inaccurate about distances and times, particularly in these kinds of fast-moving situations. And they certainly seem to me a lot like credibility problems. You know, the 10 to 15 feet behind, that kind of problem. Why isn't there a simple explanation that just says the officer was just bad at estimating distances and times? If it was just a question of that distance, I think this would be a closer case. But we have that corner. We know that if he was farther behind than 10 to 15 feet, then he wasn't in that alley. There are the physical realities of that space govern what was possible in terms of this case. Officer Wallace testified he ran up Emerald along the fence line of the vacant lot and then turned back down into that alley. So we know his path. If he was any more than that distance behind Mr. Sanders, based on where he said that Mr. Sanders discarded the firearm, then he was not in that alley. And he could not have seen what he saw. So is the theory here that the police officers planted the gun, that there was just a random gun in a garbage can in that alley, the only thing in the can? I think either is a possible alternative explanation. We don't know when that gun was placed into that can. We don't know who placed it there. Largely because of the poor investigation. Was a firearm recovered? Yes, a small, non-working firearm was recovered from a public alley in the middle of Englewood. But the evidence that was presented at this trial was not sufficient to show that it was Mr. Sanders who possessed that firearm, Mr. Sanders who discarded it. And I'll make one last argument quickly, Your Honor. We presented an alternative argument, that if this court isn't convinced about the physical impossibility of Officer Wallace's testimony, it should still remand this case because the district court failed to independently and adequately assess the credibility of the government's witnesses, which is the standard on Rule 33. Thank you.  Thank you. Good afternoon, Your Honors. Good afternoon. May it please the courts. Matthew Schneider of the United States. Your Honors, in this case, a properly instructed jury who heard properly admitted evidence in the same arguments that you heard this morning, considered the case and returned a guilty verdict against the defendant. And in this appeal, the defendant wishes to substitute their theory of physical impossibility for the jury verdict. Was there any physical evidence tying Sanders to the gun? In other words, were there fingerprints on the gun? Did the police recover the opaque bag that he apparently, allegedly used to carry the gun? No fingerprints on the gun. We called an expert to explain how common it is that fingerprints are not found on a gun, Your Honor. And the bag was not recovered, no. The gun was recovered in the trash can by Officer Kelley, and exactly where Officer Wallace saw the defendant toss the gun. This theory of physical impossibility, it's based on unknown variables that are just simply estimates. And they can't be quantified and simply stated they're unreliable. For one thing, the foot speed of Officer Sanders, I'm sorry, Officer Wallace and the defendant. Now, in the reply brief, I believe it's footnote three, there's a long discussion of analysis of speed, references to physics textbooks, mathematical equations. But at the heart of this theory is an assumption. They write, one assumes Wallace and Sanders were running at the same initial velocity. But they don't know that. We don't know that. No one had a stopwatch on Officer Wallace as he was pursuing this defendant, pursuant to a 911 call, down Emerald, into the vacant lot, and into another alley before the defendant was found hiding in a field nearby. Their assumption of physical impossibility is unfounded, and it wouldn't be improper to substitute these unfounded assumptions for the jury's verdict. And it's really fair to consider that there might be some imprecision with regard to Officer Wallace's account of the distance and the time. As Your Honor points out, many witnesses have difficulty relating time and distance in their testimony. But that can be done without discounting his credibility as a whole, as Judge Lee considered in dealing with the post-trial motions, both the Rule 29 and the Rule 33 motion. And if you consider the corroborating evidence that supports Officer Wallace. How could Wallace have seen him throw the gun in the trash can and then lost sight of him? Judge, he would have been at a proper distance to see the toss, and yet have his attention diverted by that event, and then see Sanders slip away and lost sight of him. What you have here is the vacant lot that faces Emerald, and the two of them were running east. They ran south into the north-south alley between Union and Emerald. So there's a zig and then there's a zag. Sanders zagged after he pitched the gun, and there was the opportunity to lose sight of him from Officer Wallace's perspective. The jury heard that the defendant threatened to shoot someone outside this bar in the early morning hours. He called for somebody to bring his bag. When the police arrived in response to the 911 call, he takes off. He runs. He runs through the alley, runs onto Emerald, into a vacant lot. He keeps running, and then he hides in a field. And the gun, as I mentioned, is found exactly where Wallace said it would be, in the trash can. And I respectfully submit that we have a dispute with regard to the reading of the record. There is a consistency between Callahan and Wallace's testimony with regard to where the gun was found. It was a trash can, not only a trash can but an open trash can, and this weapon was the only item in that trash can. It was not physically impossible for Wallace to have seen what he saw, whether he was in the alley already or whether he was near to the intersection of that vacant lot in the alley where he could see the defendant by the trash can. Corroborating evidence that Judge Lee referenced in his order on the post-trial motions referenced Princess White, who heard the defendant threaten to shoot ATL, Officer Callahan, who found the weapon. And so the district court properly denied the post-trial motions, including the Rule 33 motion. And in ruling on those motions, he clearly made his own evaluation of Officer Wallace's credibility, just like the jury did. And he concluded that the evidence supported the conviction of the defendant based on Wallace's account. And so, Your Honor, we submit that the result was correct below. Judge Lee properly followed the procedure in considering and ruling on the post-trial motions, including the Rule 33 motion. And we ask that this court affirm the judgment of conviction entered below. Thank you. Just a few points. The Government's Counsel pointed out the assumptions that we made in our reply brief about the physical impossibility of the evidence. And I'll note that we made the most generous assumptions we could in terms of Officer Wallace's favor. I think we were more than fair. He also notes that in this motion for new trial, that we're asking essentially this court to substitute its judgment for that of the jury. But I'll point out that on a motion for a new trial, the judge is allowed to make his own credibility determinations, regardless of what the jury's determination of credibility was, regardless of what their verdict was. And I'll point out that Judge Lee did not do that here. The portion of the order that the Government cites as being indicative of his independent consideration of the testimony of these witnesses cites the Rule 29 standard repeatedly. He did not make these independent credibility determinations, especially that of Officer Wallace, in ruling on the motion for new trial. And we'd ask that Your Honors find Officer Wallace's testimony physically incredible and either vacate the verdict or vacate and remand for a new trial. Thank you. Thank you so much. Thank you so much. And thank you, Ms. Brooks. And thanks to the Government, of course.